**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
FOR A SEARCH WARRANT**

I, Steven Mullen, being first duly sworn, state that the following is true to the best of my knowledge and belief:

1. I have been a Special Agent with Homeland Security Investigations since May 2007. I am currently assigned to the New Haven Connecticut Field Office and primarily investigate crimes related to child exploitation. In this capacity, I am responsible for conducting criminal investigations of statutes contained in Title 18 of the United States Code, including crimes related to child pornography and the sexual exploitation of children.

2. I have participated in investigations of persons suspected of violating federal child pornography laws, including Title 18, United States Code, Sections 2251, 2252, 2252A, 2422, and 1201. These investigations have included the use of surveillance techniques, the interviewing of subjects and witnesses, and the planning and execution of arrest and search and seizure warrants. In the course of these investigations, I have reviewed thousands of still images and videos containing child pornography and images depicting minor children engaged in sexually explicit conduct on various forms of electronic media, including computers, digital cameras, and wireless telephones, and have discussed and reviewed these materials with other law enforcement officers. I have also participated in training programs for the investigation and enforcement of federal child pornography laws relating to the use of computers for receiving, transmitting, and storing child pornography.

3. I am a federal law enforcement officer authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

1

4. I am currently investigating an individual, Nicholas Skirkanich ("Skirkanich") (YOB 1979), for transportation, distribution and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(1), (a)(2) and (a)(5) (collectively, the "TARGET OFFENSES").

5. I submit this application and affidavit in support of a search warrant authorizing the examination of a cellular phone associated with phone number (203) 804-8040 (the "TARGET CELL PHONE"), as further described in Attachment A.

6. The factual information supplied in this Affidavit is based on my investigation and personal knowledge, information provided to me by other law enforcement officials, and information from records checks conducted by law enforcement officials. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are sufficient to establish probable cause that evidence, fruits, and instrumentalities exist of the knowing production, possession, or access with intent to view child pornography, of the coercion and enticement of a minor to engage in sexual activity, and of the unlawful kidnapping of a minor.

## STATUTORY AUTHORITY

7. This investigation concerns alleged violations of Title 18, United States Code, Sections 2252A involving the possession, transporation, receipt and distribution of child pornography.

   a) 18 U.S.C. § 2252A(a)(1) prohibits a person from knowingly mailing, transporting, or shipping child pornography using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means, including by computer.

2

b) 18 U.S.C. § 2252A(a)(2) prohibits a person from knowingly receiving or distributing any child pornography that has been mailed or using any means or facility of interstate or foreign commerce or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

c) 18 U.S.C. § 2252A(a)(5)(B) makes it a crime for a person knowingly to possess, or access with intent to view, any material that contains an image of child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer.

**FACTS SUPPORTING PROBABLE CAUSE**

8. In or around October 24, 2022, Oath submitted a CyberTip to the National Center for Missing and Exploited Children ("NCMEC")[1] relating to the distribution of a video depicting "unconfirmed apparent child pornography". The CyberTip described that the video was sent on Saturday, October 22, 2022 from nskirk3379@aol.com (the "AOL Account") to the nashd9624@gmail.com (the Gmail Account"). The subject of the email was "Tybald". The video file was flagged by Yahoo as containing child sexual abuse imagery and reviewed by a member of the Yahoo Safety and Trust team. According to the CyberTip, the video depicted a nude prepubescent female child engaged in a sexual act. The CyberTip included IP addresses for logins to the AOL account

---

[1] NCMEC was established by the United States Congress in 1984 to serve as the nation's clearinghouse on issues related to missing and sexually-exploited children. NCMEC's CyberTipline accepts reports by the public, ISPs, and others regarding suspected crimes of sexual exploitation committed against children. ISPs are required by law to report apparent child pornography to law enforcement via the CyberTipline

3

9. On or about November 10, 2022, Yahoo submitted an "Escalation Supplemental Report" to NCMEC. The supplemental report noted that the user of the AOL Account appears to work as a high school math teacher in Greenwich, Connecticut and may have access to children. In this report, Yahoo provided additional details relating to the AOL, including:

- The user-provided name on the AOL account is "NICK SKIRKANICH".
- The AOL Account was created on 01/29/2002 at 01:27:23 (GMT).
- The phone number provided for the AOL account is +12038048040, the number associated with the TARGET CELL PHONE.
- This number was verified on 06/17/2022
- The alternate email address (AEA) provided for the AOL account is nicholas_skirkanich@greenwich.k12.ct.us.[2]
- This email address was verified on 04/13/2018
- The gender provided for the AOL Account is Male.
- The date of birth (DOB) provided for the AOL account is XX/XX/1979.
- The user-provided location for the AOL account is 06410[3].
- The last successful login to the AOL account was on 10/24/2022 at 13:51:29 (GMT) from Connecticut Education Network IP address … located in or around Greenwich, Connecticut.
- An additional successful login to the AOL account was on 10/24/2022 at 09:15:26 (GMT) from Comcast Cable IP address…, located in or around Danbury, Connecticut.

10. The supplemental CyberTip noted that the AOL Account was deactivated by AOL on 10/24/2022 at 14:07:53 (GMT) for sharing child sex abuse imagery.

11. On November 16, 2022, your affiant reviewed the video which is :41 seconds in length. This image displays a "TikTok" watermark as well as username; "@love_priv69". At 00:34 seconds during the video, the watermark "MRVINE.NET" appears in the lower right corner of this image.

---

[2] Your affiant is aware that this is the Greenwich school email address for Nicholas Skirkanich, a Greenwich high school teacher.
[3] 06410 is the zip code for Cheshire, Connecticut. Based on the publicly available information, Skirkanich previously resided in Cheshire, Connecticut

4

12. This video depicts a prepubescent Caucasian female in a bedroom with a white carpet, bed with pink bedding and armless blue rolling chair. The female is wearing only a multicolored skirt, which she removes allowing her genitals to be the focal point of the image. While seated on the armless blue rolling chair, the female uses both hands to spread her labia at which time her face and genitals are the focal point of this image. According to Tik Tok Investigator Evan Nichols, the Tik Tok username "@love_priv69" was a Tik Tok user who was banned from the platform for violating Tik Tok terms of service.

13. A Google search of the username "MRVINE.NET" results in the following DHS computer notification:

> *Web Content Denied (content_filter_denied)*
> *Your request http://mrvine.net/ was denied because of its content categorization: "Child Pornography;Placeholders;Suspicious"*
>
> *For further assistance, please contact your respective Component Help Desk and/or Component SOC.*

14. On November 21, 2022, your affiant reviewed records provided by Snap, Inc.[4] (the "Snap Records") indicating that Gmail Account is associated with Snap Chat account user with the Display name "J Cuz" and phone number 203-804-8040 which was created on May 11, 2022. On June 7, 20222, the Snap Records noted that the Snap Chat account was logged into via IP address 64.251.58.118. According to the American Registry for Internet numbers (ARIN) IP

---

[4] Based on my training and experience, I am aware that Snapchat is a popular mobile applications for sending and receiving 'self-destructing' messages, pictures, and videos. These messages, pictures and videos are referred to as 'snaps', and Snap Inc., processes approximately 700 million of them every day on Apple's iOS and Google's Android operating systems

5

64.251.58.118 resolves to the Greenwich Public Schools 290 Greenwich Avenue Greenwich, Connecticut 06830.

15. On November 28, 2022, your affiant reviewed a subpoena response from Amazon, Inc. That response noted that the AOL Account is attributed to Amazon customer Nicholas SKIRKANICH (YOB: xx/xx/1979) with a billing and shipping address of XXXXX XXXXX Ridgefield, Connecticut . On November 10, 2022, a specific Amazon order # 112-6529404-7122623 was made from IP address 64.251.58.118, which as noted in the preceding paragraph, resolves to the Greenwich Public Schools 290 Greenwich Avenue Greenwich, Connecticut 06830.

16. The Snap Chat records indicated that from June 2, 2022, until October 27, 2022, internet protocol (IP) address 71.234.201.31 was used to access the Snap Chat account approximately one hundred and ninety-five (195) times.

17. On November 21, 2022, Special Agent Mullen reviewed records from Comcast, which identified internet protocol address (IP) 71.234.201.31 as belonging to NICHOLAS SKIRKANICH from June 19, 2022, until November 16, 2022.[5] The service address is identified as XXXXXXXX Ridgefield, Connecticut 06877, Telephone: (XXX) XXX-8040, the phone number associated with the TARGET CELL PHONE. Based on publicly available information, I believe SKIRKANICH purchased the residence in or around October 2020.

18. As part of this investigation, your affiant requested NCMEC to provide any CyberTip reports related to the IP address 71.234.201.31. In response, NCMEC provided me with a CyberTip Report submitted by TikTok[6]. In that CyberTip, TikTok reported that, on

---

[5] Based on my training and experience, Comcast retains IP records for 180 days. Accordingly, I do not have Comcast records for this IP before June 19, 2022.
[6] Based on my training and experience, I am aware that TikTok is a popular social media platform used to create and share short videos

6

August 12, 2021, at 03:36 (UTC) internet protocol (IP) address 71.234.201.31 uploaded a video file to Tik Tok account username: postinprivs1837 which Tik Tok determined to be apparent child pornography.

19. On December 12, 2022, HSI SA Mullen reviewed the video that was the subject of TikTok's CyberTip. This video was nineteen (00:19) seconds in length and depicted a Caucasian prepubescent female minor victim (MV) standing in a white bathtub. A white colored shower curtain with tan designs is on the right side of the video frame. The focal point of this image was the vaginal and breast area of the MV. The MV turned around and her vaginal and anus area become the focal point of the image.

20. On December 1, 2022, in response to a search warrant issued by the District Court of Connecticut for the Gmail Account, Google Inc. reported that the Gmail Account was created on March 23, 2020 and was deleted on October 28, 2022. Because this account was deleted, no further information was available from Google, Inc.

21. In response to a subpoena, Verizon provided documentation that, as of December 5, 2022, mobile telephone number XXXXXX8040, is associated with IMEI number 354551505374607 and is identified as an iPhone 13. Verizon was not able to provide subscriber information as those records were in the custody of Comcast. A subpoena was served on Comcast but records have not yet been provided.

22. Based on my training and experience, I believe there is probable cause that the TARGET CELL PHONE was used to access the AOL and the GMAIL Accounts that are the subject of the CyberTip and that the TARGET CELL PHONE contains evidence and fruits of the TARGET OFFENSES. In particular, in my experience, when an individual accesses the internet

and/or an email account from multiple locations (here, from his school and home), it indicates that he may be using a mobile device to do so.

## COMMON CHARACTERISTICS OF
## CHILD PORNOGRAPHY OFFENDERS

23. Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the possession, transportation and distribution of child pornography:

> a. Those individuals may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.
>
> b. Those individuals may collect and/or share sexually explicit or suggestive materials such as photographs. Such individuals oftentimes use these materials for their own sexual arousal and gratification.
>
> c. Those individuals often maintain their collections in a digital or electronic format in a safe, secure and private environment, such as a cellular phone.
>
> d. Those individuals may correspond with and/or meet others to share information and materials; conceal such correspondence as they do their sexually explicit material; and maintain the contact information for individuals with whom they have been in contact and who share the same interests in child pornography.
>
> e. Those individuals often utilize social media platforms to share sexually explicit material and communicate with others who are interested in the sexual exploitation of minors. Social media platforms allow users to interact with each other in a quick and (seemingly) anonymous fashion.

## **TECHNICAL TERMS RELATING TO CELLULAR PHONES**

24. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

   d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications

that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

25. Based on my training, experience, and research, I know that the TARGET CELL PHONE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. Based on my knowledge, training, and experience, I know that electronic devices, such as the TARGET CELL PHONE, can store information for long periods of time.  Similarly,

things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET PHONE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET PHONE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   **d.** The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. ***Nature of examination.*** Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the TARGET DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29. ***Request to Seal:*** Because this is an application that pertains to an ongoing criminal investigation and because disclosure of the information contained herein as well as disclosure of the search warrant being requested herein may compromise the investigation and lead to the destruction of evidence, I respectfully request that the search warrant, application, and this affidavit be ordered sealed by the Court until February 17, 2023.

## CONCLUSION

30. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that the TARGET CELL PHONE was used to commit the TARGET OFFENSES, that is the possession, transportation, receipt and/or distribution of child pornography, and contains evidence, contraband, fruits and/or instrumentalities of these crimes. Accordingly, I request the Court to issue a search warrant.

STEVEN M MULLEN
Digitally signed by STEVEN M MULLEN
Date: 2022.12.14 09:05:08 -05'00'

Steven Mullen
HSI Special Agent

Subscribed electronically and sworn to telephonically on this 14th day of December, 2022.

S. Dave Vatti
Digitally signed by S. Dave Vatti
Date: 2022.12.14 09:21:59 -05'00'

S. David Vatti
United States Magistrate Judge

ATTACHMENT A

Description of Items to be Searched

      This warrant is for a cellular phone associated with IMEI number 354551505374607 and phone number (203) 804-8040 (the "TARGET CELL PHONE")

ATTACHMENT B

Particular Things to be Seized

All records and information on the TARGET CELL PHONE that constitute fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 22522A(a)(1) (Transportation of Child Pornography); 18 U.S.C. § 2252A(a)(2) (Receipt / Distribution of Child Pornography) and 18 U.S.C. § 2252A(a)(5) (Possession of Child Pornography) (collectively, the "TARGET OFFENSES"), for the time period from August 1, 2021 to the date this warrant is executed, including, but not limited to, the following:

1. Child pornography, as defined in 18 U.S.C. § 2256(8), and/or visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), in any format, including any associated metadata and/or EXIF information;

2. Evidence of who used, owned, or controlled the TARGET CELL PHONE at the time the things described in this warrant were possessed, received, distributed, transported or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, browsing history, user profiles, email, email contacts, photographs, and correspondence;

3. Evidence indicating how and when the TARGET CELL PHONE was accessed or used to, including the geographic location of the device when it was accessed or used, to determine the chronological context of access, use, and events relating to TARGET OFFENSES;

4. Records of or information about Internet Protocol addresses used by the TARGET CELL PHONE;

5. Records and information concerning the email accounts: nskirk3379@aol.com and nashd9624@gmail.com, including evidence of installation and/or deletion of the email account(s).

6. All notes, documents, records, correspondence, and materials, in any format and media (including, but not limited to e-mail), pertaining to the TARGET OFFENSES;

7. Records and information concerning online storage or other remote computer storage, including, but not limited to, applications used to access such online storage or remote computer storage and user logs or archived data that show connection to such online storage or remote computer storage;

8. Evidence of the TARGET CELL PHONE's attachment to other storage devices;

9. Information, documents, records, photos, videos, or correspondence, in any format or medium, pertaining to use or ownership of TARGET CELL PHONE, or that aid in the identification of persons involved in violations of the TARGET OFFENSES;

10. Evidence of software that would allow others to control the TARGET CELL PHONE, such as malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software; and evidence of the lack of such malicious software;

11. Evidence indicating the TARGET CELL PHONE's user's state of mind as it relates to the crime under investigation;

.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Pursuant to Rule 41(e)(2)(B), it is authorized that electronically stored information may be imaged or copied. Consistent with Rule 41(e)(2)(B), the warrant is deemed executed once the subject computer has been physically seized, and that review of the contents of the subject computer is permitted at a later time.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, Homeland Security Investigations may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.